In re Vencenza MADDALONI, Debtor.

FORD CONSUMER FINANCE COMPANY, INC., Creditor–Appellant

v.

Vencenza MADDALONI, Gilbert Rosenbaum, Trustee, Appellees.

No. CIV. A. 3–97–CV–1548.

United States District Court, D. Connecticut.

July 17, 1998.

---

Edward P. Jurkiewicz, Hunt, Leibert, Chester & Jacobson, Hartford, CT, for Appellant.

Walter D. Wagoner, Jr., New Haven, CT, for Appellees.

## RULING

HALL, District Judge.

The question presented in this appeal is whether 11 U.S.C. § 1322(b)(2), which prohibits modification of a creditor's claims when those claims are secured by a mortgage on the debtor's principal place of residence, extends to a claim secured by a multi-unit property in which only one of the units is the debtor's principal residence. That is, does § 1322(b)(2)'s antimodification provision apply when the creditor's security interest extends to other income-producing units located in the same structure as the debtor's principal residence? For the reasons that follow, the court answers this question in the negative. Accordingly, the bankruptcy court's decision is affirmed.

## I. BACKGROUND

The facts of this case are not in dispute. Vencenza Maddaloni filed a petition under Chapter 13 of the Bankruptcy Code on November 1, 1996. She was indebted to Ford Consumer Finance Corp. ("FCFC") under a refinancing of the debtor's previous mortgage of real property located at 136 Fillmore Street in New Haven, Connecticut ("the property"). The property consists of a two-family dwelling wherein one of the units is the debtor's principal residence. Maddaloni owed $83,000 to FCFC on the date she filed for bankruptcy.

Maddaloni moved to bifurcate or "strip down" her creditors' claims, including FCFC's, into secured and unsecured claims pursuant to 11 U.S.C. § 506(a) which provides in relevant part that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim.

FCFC objected to the motion "and the parties stipulated to a value for the property of $47,500 ... The secured component of Ford Consumer's claim is therefore $38,926.67 [i.e. the value of the asset less the tax lien]. The unsecured component ... exceeds $51,000." Appellant's Brief, p. 5–6.

The amended Chapter 13 plan proposed by Maddaloni contemplated payment of the secured claim over five years and for no payments to all unsecured creditors (including FCFC). The plan was approved by the bankruptcy court over the objections of FCFC. Upon the debtor's successful completion of her Chapter 13 plan, FCFC's unsecured claim will be discharged and its lien shall be void.

## II. STANDARD OF REVIEW

This court has jurisdiction in this matter pursuant to 28 U.S.C. § 158(a), which provides for appellate jurisdiction in the district courts from "final judgments, orders, and decrees ... of bankruptcy judges." In reviewing the final decision of a bankruptcy court, the district court uses a *de novo* standard for examining conclusions of law and a clearly erroneous standard for examining conclusions of fact. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990), *cert. denied, Air Line Pilots Ass'n, Intern., AFL–CIO v. Shugrue*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). There is no factual dispute before the court.

## III. ANALYSIS

Bifurcation of claims into secured and unsecured components is generally permitted under 11 U.S.C. § 506(a). According to

§ 1332(b)(2), secured and unsecured claims can be modified through a Chapter 13 plan. However, a debtor can not modify claims secured by the debtor's principal residence. Specifically, the section allows a debtor to:

· modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

§ 1322(b)(2). Prior to *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Second Circuit had held that splitting mortgage debts into secured and unsecured portions under § 506(a) did not violate the provisions of § 1322(b)(2). *In re Bellamy,* 962 F.2d 176, 180–81 (2d Cir.1992).

In *Nobelman,* the debtors' proposed bankruptcy plan bifurcated the mortgage on their residence under § 506(a) and allowed for payments only on the secured portion. The bank objected to the plan, arguing that the bifurcation violated § 1322(b)(2). The Court noted that the debtor properly sought a valuation pursuant to § 506(a) in order to determine whether the lender held a secured claim, but the Court rejected the suggestion that § 1322(b)(2) protects a mortgagee's claim only to the extent that he holds a "secured claim" under § 506(a). The Court held that the valuation determination under § 506(a) "does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim [under § 506(a) ]." *Id.* at 329, 113 S.Ct. at 2110. In short, the Court clarified that, with respect to a creditor holding a claim secured by a debtor's principal residence, § 1322(b)(2) prevents modification of the entire claim, not only its secured portion. *Nobelman,* 508 U.S. at 328–32, 113 S.Ct. at 2109–12.

In this appeal, FCFC contends that the protections of § 1322(b)(2) apply to its claim because the claim is secured by a lien on property that includes, but is not limited to, the debtor's principal residence. According to FCFC, it is irrelevant for purposes of § 1322(b)(2) that its security interest extends to income-producing units in addition to the unit that is the debtor's principal residence. The court disagrees.

In *Lomas Mortgage, Inc., v. Louis,* 82 F.3d 1 (1st Cir.1996), the debtor owned a three-unit dwelling and lived in one of the units. As in the case before the court, the debtor's Chapter 13 plan limited the mortgagee's lien to the market value of the property. The court concluded that the debtor's claim was not secured "only by a security interest in real property that is the debtor's principal residence," as required for protection under § 1322(b)(2), and therefore could be modified as described in the Chapter 13 plan. The court noted that its decision was difficult to reconcile with the policy goal behind § 1322(b)(2)—encouraging home lending—and that the decision discriminates against lenders to multi-family properties. But the court concluded that extending the provision to claims secured by more than the principal dwelling would create difficult "line-drawing" problems. ("It is unlikely Congress intended the antimodification provision to reach a 100–unit apartment complex simply because the debtor lives in one of the units." Id. at 6.)[1]

Consistent with the majority of courts that have examined this issue, this court adopts the *Lomas* court's analysis of § 1322(b)(2) and finds that the provision is inapplicable when the creditor's security interest extends to other income-producing units in addition to the debtor's principal residence. *See In re Adebanjo,* 165 B.R. 98, 104 (Bankr.D.Conn. 1994) (collecting cases) (allowing strip down of a lien secured by a three-unit apartment complex although the debtor occupied one of the units). *See also In re Del Valle,* 186 B.R. 347, 349 (Bankr.D.Conn.1995) (allowing strip

---

1. The appellant urges the court to adopt the reasoning in the decision of *In re Guilbert,* 165 B.R. 88 (Bankr.D.R.I.1994). As stated by the appellant, the *Guilbert* court "held that a loan secured only by a debtor's principal residence is protected … regardless of whether the property also has other actual or potential uses." Appellant's Br. at 19. However, *Guilbert* is clearly overruled by *Lomas.*

down of a lien secured by a duplex although the debtor lived in one side and rented the other); *In re McGregor,* 172 B.R. 718, 720–21 (Bankr.D.Mass.1994) (allowing strip down of a lien secured by a four-unit apartment complex although the debtor lived in one of the units) ("If [Congress intended to extend § 1322(b)(2) to multi-unit buildings,] the statute should refer to real property that 'includes' the residence. Instead, the word 'is' appears, which more aptly describes an equivalence between the real estate and the residence.").

FCFC urges the court to adopt the statutory construction offered in *Brunson v. Wendover Funding, Inc. (In re Brunson),* 201 B.R. 351, 352–54 (Bankr.W.D.N.Y.1996). The *Brunson* court rejected *Lomas*'s categorical rule that § 1322(b)(2) does not apply to multi-unit houses and held that, depending on the facts, a duplex could be subject to § 1322(b)(2)'s antimodification provisions:

> each case must turn upon the intentions of the parties: Was home ownership the predominant intention (and rental income simply a means to that end) or was investment income or the operation of a business the predominant purpose of the transaction?

The applicability of § 1322(b)(2) should depend on the intended primary use of the property, and not its physical dimensions:

> If the transaction was predominately viewed by the parties as a loan transaction to provide the borrower with a residence, then the antimodification provision will apply. If, on the other hand, the transaction was viewed ... as predominately a commercial loan transaction, then the strip down will be available. Such ruling serves the Congressional intent of encouraging home mortgage lending ...

*Id. See also In re Guilbert,* 176 B.R. 302 (D.R.I.1995) (the fact that a debtor's primary residence also produced income to the debtor

did not render it something other than primary residence for purposes of § 1322(b)(2)).

For the reasons discussed in *Lomas,* this court declines to engage in the line-drawing exercise required by *Brunson.* First, the statutory language offers no support for this process.[2] The court finds that § 1322(b)(2)'s language "secured only by a security interest in real property that is the debtor's principal residence" precludes antimodification protection for mortgage lenders who take a security interest that extends to other income-producing units. In other words, the antimodification provision does not apply to a claim secured by a multi-unit property in which one of the units is the debtor's principal residence. To hold otherwise would be to read "only," and particularly its placement after "secured" and before "by a security interest in real property that is the debtor's principal residence," out of the statute. Further, the use of "is" without any modifier (*e.g.,* "in whole" or "in part") does not evince an intent by Congress to apply the antimodification provision to real property that includes, but is more than, a debtor's residence. *See, e.g., Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (collecting cases) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

Because FCFC's security interest extends to the other rental unit of 136 Fillmore Street, the antimodification provision of § 1322(b)(2) does not apply to that interest. Accordingly, the order of the bankruptcy court which confirmed the debtor's Chapter 13 plan is **AFFIRMED.**

**SO ORDERED.**

---

**2.** In a related argument based largely on *Brunson,* the appellant urges the court to view the loan transaction in this case as a "consumer" transaction. As such, appellant argues, application of the antimodification provision to the loan would be consistent with Congress's intent to benefit the residential (as opposed to commercial) mortgage market. Appellant's Br. at 20–22. As the *Lomas* court noted, "the legislative history does not state with clarity how a mortgage on mixed property, one with both residential and investment characteristics, should be treated." *Lomas,* 82 F.3d at 5. Less than clear evidence of a congressional intent to benefit home lenders does not by itself permit the court to read the statutory language in the antimodification provision as applicable to all mortgages on any real property that includes a debtor's residence.