**In re Bruce KIMBELL and Darcie Kimbell, Debtors.**

**No. 99–23699.**

United States Bankruptcy Court, W.D. New York.

April 11, 2000.

as follows: (a) 315 Orchard Street, Elmira, New York, which was a two-family structure with one unit used as the Debtor's residence ("Orchard Street"); (b) 552 East Third Street, which was a rental property; and (c) 715 Harpur Street, which also was a rental property; and (2) Orchard Street had an appraised value of $24,000.00 and was subject to a first mortgage in favor of Beneficial Homeowner Service Corporation ("Beneficial") that had an outstanding balance of approximately $37,400.00 (the "Orchard Street Mortgage").

On January 31, 2000, Beneficial filed a secured proof of claim (the "Beneficial Claim") for the Orchard Street Mortgage in the amount of $39,390.36, which indicated that all notices should be sent to Beneficial at 961 Weigel Drive, Elmhurst, Illinois 60126, Attn: RE Bankruptcy.

Charles Anderson, Elmira, NY, for debtors.

George M. Reiber, Rochester, NY, Chapter 13 Trustee.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### *BACKGROUND*

On November 30, 1999, Bruce Kimbell and Darcie Kimbell (the "Debtors") filed a petition initiating a Chapter 13 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtors indicated that: (1) they were the owners of three parcels of real property,

On February 11, 2000, the Debtors filed a motion pursuant to Section 506(a) (the "Valuation Motion") to value Orchard Street and fix the allowed secured claim of Beneficial for the Orchard Street Mortgage at $24,000.00.[1] At the February 25, 2000 return date of the Valuation Motion, the Court: (1) noted that the Motion had been served only upon the alleged attorneys for Beneficial and not as required by the Beneficial Claim, and directed that it be reserved; and (2) required that the Debtors provide the Court with a Memorandum of Law on the issue of whether the proposed "cramdown" of the Orchard Street Mortgage pursuant to Sections 506(a) and 506(d)[2] in the Debtors' Chapter

---

1. Section 506(a) provides that:
   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the pro-
   posed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
   11 U.S.C. § 506(a) (2000).

2. Section 506(d) provides that:
   (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—
   (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
   (2) such claim is not an allowed secured claim due only to the failure of any entity to

13 plan was prohibited by the antimodification provision of Section 1322(b)(2) [3] because, even though Orchard Street was a two-family structure, it was the Debtors' principal residence, and the Beneficial Mortgage documents did not grant Beneficial a security interest in any other collateral other than Orchard Street, not even any rents and profits from Orchard Street.

On March 15, 2000, the Debtor reserved the Valuation Motion on Beneficial at the address as required by the Beneficial Claim, and on March 17, 2000, the Debtor filed a Memorandum of Law supporting its position that the antimodification provision of Section 1322(b)(2) did not apply to a mortgage when the Debtor's residence is only one unit of a multi-family structure.

At the March 31, 2000 adjourned date on the Valuation Motion: (1) it was confirmed that Beneficial had not interposed any opposition to the Motion; and (2) the Court indicated that, after having reviewed the relevant case law, it would grant the Motion and issue a written Decision & Order.

### DISCUSSION

■ No Court which has published a decision on the issue as to whether the antimodification provision of Section 1322(b) applies to a mortgage on a multi-family structure where only one unit is used as the debtor's residence, has been willing to hold, as a matter of law, that the plain language of Section 1322(b) makes it applicable to such a structure. In fact, those Courts have all acknowledged that the language would not support such a conclusion, and have expressed the need to look to the legislative history of the subsection to decide the issue. I cannot disagree with those Courts which have decided that, as a matter of statutory construction, a mortgage on a two-family structure such as Orchard Street, where one unit is used as the Debtor's residence, is not protected from modification by Section 1322(b)(2).[4]

With only one exception, the Courts which have published a decision on this issue have concluded that a mortgage on multi-family structure where one of the units is used as the debtor's principal residence can be modified as part of a Chapter 13 plan and "crammed down" by the use of Sections 506(b) and 506(d). *See Lomas* and *Ford Consumer Finance Company, Inc. v. Maddaloni,* 225 B.R. 277 (D.Conn. 1998) and the cases cited therein. A minority view was set forth in the decision of Bankruptcy Judge Michael J. Kaplan in *In re Brunson,* 201 B.R. 351 (Bankr.W.D.N.Y. 1996) (*"Brunson"*). In *Brunson,* Judge Kaplan, after reviewing and interpreting the relevant legislative history, held, on a motion to dismiss, that the determination of whether the antimodification provision of Section 1322(b) applied to a mortgage on a duplex depended upon whether the facts and circumstances demonstrated that the parties had intended to enter into a consumer residential or commercial transaction. Unlike Judge Kaplan, the other Courts which have decided this issue have refused to engage in such a fact-finding process, and have simply set forth a bright line rule that a mortgage on multi-family structure where the debtor resides in one of the units is not protected by the antimodification provision of Section 1322(b).

---

file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d) (2000).

3. Section 1322(b)(2) provides that:
   (b) Subject to subsections (a) and (c) of this section, the plan may—
   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave

unaffected the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b)(2) (2000).

4. It is unlikely Congress intended the antimodification provision to reach a 100–unit apartment complex simply because the debtor lives in one of the units. *See Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1, 6 (1st Cir.1996) (*"Lomas"*).

In discussing the legislative history to Section 1322(b) in his concurring opinion in *Nobelman v. American Savings Bank*, 508 U.S. 324, 332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), Justice Stevens noted that this "favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." Because the Courts have given a clear message to mortgagees of duplexes and other multi-family structures that either their mortgages will not be afforded the antimodification protection of Section 1322(b), as a matter of law, or may be afforded it only after a possibly lengthy and expensive fact-finding process,[5] this policy underlying Section 1322(b) will not affect lending against multi-family structures unless Congress amends the language of the subsection to make it clearly applicable.

Therefore, this Court joins with the clear majority of Courts and holds that a mortgage secured by a multi-family structure where only one unit is used as the debtor's residence is not protected by the antimodification provision of Section 1322(b).

As a result of this decision and the prior Court decisions, mortgage lenders will continue to underwrite these multi-family structure mortgages accordingly. The concerns expressed by a number of Courts that their decisions may impact on the ability of some individuals to become homeowners is one which Congress may or may not wish to address.

### CONCLUSION

The Beneficial Claim is allowed as a secured claim in the amount of $24,000.00 and as an unsecured claim in the amount of $15,390.36.

**IT IS SO ORDERED.**

---

**5.** The prospect of such a fact-finding process is the equivalent, from a practical business perspective when such mortgagees must evaluate risk-reward and cost-benefit in underwriting these mortgages, of a holding that the antimodification provision does not apply.