**In re George I. KOPER, Debtor.**

No. 99–30277.

United States Bankruptcy Court,
D. Connecticut.

Oct. 31, 2002.

748

Frederick A. Dlugokecki, Naugatuck, CT, for Debtor.

Martha E. Croog, West Hartford, CT, for Objector, Bank of America, FSB.

Alan P. Rosenberg, Rosenberg & Rosenberg, P.C., West Hartford, CT, for Objector, Chase Manhattan Bank.

Molly T. Whiton, Hartford, CT, Chapter 13 Trustee.

## MEMORANDUM OF DECISION ON OBJECTIONS TO CONFIRMATION OF PLAN

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

This matter presents the question whether a Chapter 13 debtor's plan can provide for payment of the secured component of a bifurcated, non-homestead mortgage claim over a time period greater than the five-year maximum plan term allowed under Bankruptcy Code Section 1322(d).

This Court construes the relevant provisions of Chapter 13, as interpreted by the United States Supreme Court, to compel payment of the present value of the secured component of an undersecured creditor's bifurcated claim within the five-year term of a debtor's plan. Because the Debtor's present plan does not provide for such treatment, the pending objections must be SUSTAINED, and confirmation of such plan DENIED.[1]

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(L).

### III. FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of this matter only, the Court finds that the following facts are uncontested or incontestable in the present case:

1. The Debtor commenced the present bankruptcy case on January 26, 1999 (hereafter, the "Petition Date"), through the filing of a voluntary petition under Chapter 13.

---

1. By Order dated September 20, 1999 (Doc. I.D. No. 77), the Debtor's plan was "conditionally confirmed", subject to resolution of the instant matter. Therefore, an appropriate rectifying order shall enter.

2. According to the Debtor's Schedules, he is the owner of six parcels of real property. All but one of such parcels are investment properties not occupied by the Debtor.

3. Among the investment properties owned by the Debtor is a multi-family home known as and numbered 36 Gilbert Street, Waterbury, Connecticut (hereafter, the "Gilbert Property"). The fair market value of the Gilbert Property is $35,000.00. The Gilbert Property is not the principal residence of the Debtor.

4. Bank of America, FSB (hereafter, "BA"), holds a mortgage interest in the Gilbert Property to secure indebtedness owed to it by the Debtor in the Petition Date amount of $79,784.88 (hereafter, the "BA Claim").

5. As of the Petition Date there was a payment arrearage on the BA Claim in the amount of $6,933.95 (hereafter, the "BA Arrearage Claim").

6. The Debtor's Second Amended Chapter 13 Plan (Doc. I.D. No. 74) (hereafter, the "Plan") treats the BA Claim in the following manner:

 a. the BA Claim is deemed to be a *secured* claim in the amount of $35,000.00 (hereafter, the "BA Secured Claim"), and *unsecured* for the balance of $44,784.88 (hereafter, the "BA Unsecured Claim"); [2]

b. the Debtor is to continue to make current payments due on the BA Claim per the subject mortgage contract outside the Plan;

 c. the BA Arrearage Claim is treated as a secured claim and paid in full with 6% interest within the Plan; and

 d. BA is to retain its mortgage lien on the Gilbert Property.

7. Also among the investment properties owned by the Debtor is a multi-family home known as and numbered 35 Fairview Street, Waterbury, Connecticut (hereafter, the "Fairview Property"). The fair market value of the Fairview Property is $50,000.00. The Fairview Property is not the principal residence of the Debtor.

8. The Chase Manhattan Bank (hereafter, "Chase") holds a mortgage interest in the Fairview Property to secure indebtedness owed to it by the Debtor in the approximate Petition Date amount of $110,000.00 (hereafter, the "Chase Claim").

9. As of the Petition Date there was a payment arrearage on the Chase Claim in the amount of $3,964.00 (hereafter, the "Chase Arrearage Claim").

10. The Plan treats the Chase Claim in the following manner:

 a. the Chase Claim is deemed to be a *secured* claim in the amount of $50,000.00 (hereafter, the "Chase Secured Claim"), and *unsecured* for the balance of $60,000.00 (hereafter, the "Chase Unsecured Claim"); [3]

---

**2.** The Debtor previously prosecuted a motion denominated "Motion to Determine Status of Claims" with respect to the BA Claim (Doc. I.D. No. 7). That Motion sought, *inter alia,* to bifurcate the BA Claim into secured and unsecured component parts in accordance with Bankruptcy Code Section 506(a). The Debtor and BA eventually agreed that the BA Claim would be allowed as a *secured* claim in the amount of $35,000.00 and an *unsecured* claim for the balance of $44,784.88.

**3.** The Debtor previously prosecuted a motion denominated "Motion to Determine Status of Claims" with regard to the Chase Claim (Doc. I.D. No. 6). That Motion sought, *inter alia,* to bifurcate the Chase Claim into secured and unsecured component parts in accordance with Code Section 506(a). An order eventually entered on that Motion determining the Chase Claim to be comprised of a *secured* claim in the amount of $50,000.00 and an *unsecured* claim for the balance of $60,000.00.

b. the Debtor is to continue to make current payments due on the Chase Claim per the subject mortgage contract outside the Plan;

c. the Chase Arrearage Claim is treated as a secured claim and paid in full with 6% interest within the Plan; and

d. Chase is to retain its mortgage lien on the Fairview Property.

11. BA and Chase (hereafter collectively, the "Objectors") have objected to confirmation of the Plan.[4] A hearing was held on those objections, and an opportunity was provided for the parties to file legal memoranda in support of their positions. Having now considered the entire record in this matter, the Court issues this Memorandum of Decision.

## IV. DISCUSSION

In the Plan the Debtor proposes to bifurcate the claims of certain mortgage creditors consistent with the value of the secured and unsecured components of their claims, as determined pursuant to Code Section 506(a) in previous motion proceedings (hereafter, the "Bifurcation").[5] *See* fns. 2 and 3, *supra.* The unsecured components of these undersecured claims receive no distribution, or other substantive treatment, under the Plan in view of the discharge of the Debtor's personal liability in a previous Chapter 7 bankruptcy case. The secured components of the mortgagee's Claims are addressed in the Plan as follows: (i) pre-petition arrearages in the payment of mortgage note installments are proposed to be cured within the Plan[6] over the life of the plan, and (ii) current contractual mortgage payments are proposed to be maintained outside the Plan[7] during the Plan's five-year term, and presumably thereafter.[8] The composite effect of the foregoing treatment will be to satisfy the subject mortgage claims in full some time *after* the expiration of the term of the Plan, but well before their contractual terminus date.

The Objectors oppose treatment of their Claims in the foregoing manner; asserting, in essence, that if an undersecured

4. The Objectors' *written* objections (Doc. I.D.Nos. 69, 70) were addressed to the Debtor's *First* Amended Plan (Doc. I.D. No. 56). The Debtor's subsequent Plan did not alter any of the provisions material to the instant dispute.

5. Section 506(a) provides in pertinent part as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (1999).

6. The phrase, "within the plan", as used in this Memorandum of Decision, refers to treatment of a creditor's claim through distributions by the Chapter 13 Trustee made from monthly plan payments received from the Debtor over the life of the Plan.

7. The phrase, "outside the plan", as used in this Memorandum of Decision, refers to treatment of a creditor's claim through payment made directly by the Debtor, not through the conduit of the Chapter 13 Trustee or from monthly plan payments.

8. Although the Plan is silent on this point, the Court assumes that the Debtor's ultimate goal is to fully satisfy the secured components of the mortgagees' claims and thereby obtain a release of the mortgage liens on the subject properties. Under the structure of the proposed Plan, this goal will require payments after the expiration of its term.

claim is bifurcated in a plan, it must be paid, with interest, within the maximum five-year term of the plan. Despite the contrary conclusions of several courts without binding precedential authority over this Court, the Objector's position possesses a firm foundation under the governing statutory scheme.

## A. Governing Statutory Framework.

The plan formulation and confirmation standards of the Code are the logical starting place for analysis of the question at bar. Those Sections provide in pertinent part as follows:

### § 1322. Contents of plan.

\* \* \* \* \* \*

(b) *Subject to subsections (a) and (c) of* this section, the plan may—

\* \* \* \* \* \*

(2) *modify the rights of holders of secured claims* other than a claim secured only by a security interest in real property that is the debtor's principal residence... or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing ... of any default;

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

(d) *The plan may not provide for payments over a period that is longer than* ... *five years.*

11 U.S.C. § 1322 (1999) (emphasis supplied).

### § 1325. Confirmation of plan.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) *the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;* or

(C) the debtor surrenders the property securing such claim to such holder....

11 U.S.C. § 1325(a) (1999) (emphasis supplied).

## B. Bifurcation as a Modification.

■ A Chapter 13 plan's bifurcation of a mortgagee's claim into secured and unsecured components is a *modification* of the rights of such creditor within the scope of Section 1322(b)(2). *See Nobelman v. American Savings Bank*, 508 U.S. 324, 331, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (overruling *In re Bellamy*, 962 F.2d 176 (2d Cir.1992), *inter alia*, in this respect[9]). This is true even if a plan proposes to maintain current mortgage payments in the contractual amount during its term. In other words, even though a plan does not modify the contractual mortgage payment amount, and those payments are made when due during the term of a plan, the consequent shortening of the contractual repayment period produced by bifurcation is itself a modification of a mortgagee's rights even though the effect of such modification may not be felt until sometime after the plan term has run. *See id.* ("Petitioners propose to reduce the outstanding mortgage principal to the fair market value of the collateral, and, at the same time, they insist that they can do so without modifying the bank's rights .... That appears to be impossible. The bank's contractual rights are contained in a unitary note .... [T]o preserve the interest rate and the amount of each month-ly payment specified in the note after having reduced the principal to ... [the fair market value], *the plan would also have to reduce the term of the note dramatically. That would be a significant modification of a contractual right.*" (emphasis supplied)).

## C. Treatment of a Modified Secured Claim.

■ A secured claim that is modified by a plan is plainly "provided for" by that plan, as contemplated by Section 1325(a)(5). Consequently, in order for such a plan to be confirmed, it must provide for payment thereunder of the present value of any such modified secured claim. 11 U.S.C. § 1325(a)(5)(B)(ii). In addition, the time period allowed to amortize the modified secured claim is constrained by Section 1322(d); namely, the plan cannot provide for distributions which extend beyond five years.[10]

■ In sum, if a Chapter 13 debtor chooses to modify the rights of a mortgagee by bifurcating its claim into secured and unsecured components pursuant to Section 506(a), his Chapter 13 plan must provide for the present value of the secured component of that claim to be fully paid to the mortgagee within the five-year (or less)

**9.** *Bellamy* held, *inter alia*, that a creditor's "secured claim is *not ... modified*" through bifurcation, and "therefore need not be paid off within the life of the plan." 962 F.2d at 185 (emphasis in original).

**10.** Although the juxtaposition of the *mandatory* language of Section 1322(d) and the *permissive* tenor of Section 1322(b) would itself compel a construction subjecting the subsection (b) provisions to the backstop of subsection (d), the "subject to" prefatory language of subsection (b) removes any doubt in that regard. Although that language—"[s]ubject to subsections (a) and (c) of this section, the plan may...." (hereafter, the "Prefatory Language")—appears not to refer to subsection (d), this Court concludes that Congress in-tended otherwise. The Prefatory Language remained unchanged despite changes to Section 1322 brought about by the Bankruptcy Reform Act of 1994 (hereafter, the "1994 Amendments"). The 1994 Amendments created a new subsection (c) and moved the five-year plan limitation language of old subsection (c) to a new subsection (d) without altering the cross-reference of the Prefatory Language. This Court concludes from all the circumstances that the cross-reference to subsection "(c)" in the Prefatory Language was intended by Congress to be changed to "(d)" at the time of the 1994 Amendments, but was left unaltered by virtue of a drafting or codification error.

term of the plan. A confirmed and consummated plan of this nature—a so-called "strip and pay" plan—necessarily satisfies a mortgage claim—in a reduced principal amount—during the plan term, and thereby enables a debtor to avoid a foreclosure occasioned by a pre-petition default.

## D. Alternative to Modification.

■ Alternatively, a debtor can thwart mortgage foreclosure by opting *not to modify* a mortgagee's claim through bifurcation, but instead, by proposing to "cure and maintain" the mortgage debt. He accomplishes this by curing a pre-petition payment default, *i.e.* an arrearage, within the plan's maximum five-year term, *see* 11 U.S.C. §§ 1322(b)(3), (b)(5), (d), and maintaining current mortgage payments *outside the plan*. In other words, he can cure the mortgage default by treating the arrearage alone, while opting not to provide for the underlying mortgage claim in the plan, *see Rake v. Wade*, 508 U.S. 464, 474, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). The underlying mortgage claim can be dealt with *on its original terms* wholly outside the plan. *See, e.g.*, 8 Collier on Bankruptcy ¶ 1322.06[1] (15th Edition Revised). Such a "cure and maintain" plan effectively reinstates a mortgage at the end of the plan term on the same basis as existed before the commencement of the bankruptcy case.

## E. The Debtor's Illicit Hybrid Plan.

■ In attempting to deal with delinquent mortgage debt on his investment properties, the Debtor has proposed a plan which merges "strip and pay" and "cure and maintain" plans, producing a plan that proposes to (i) modify the rights of the mortgagees through bifurcation of their claims into secured and unsecured compo-

nents; (ii) cure pre-petition arrearages during the plan term; and (iii) maintain current contractual mortgage payments outside the plan during the plan term.[11] Such a plan is hereafter referred to as a "Hybrid Plan".

The Debtor's analysis—supported by the Chapter 13 Trustee—concludes that a Hybrid Plan is a permissible Chapter 13 device. That analysis rests principally upon an assertion that use of a Hybrid Plan is supported by Section 1322(b)(5), which *allegedly* is not subject to the five-year time constraint of Section 1322(d). However, for the alternative reasons stated hereafter, the Debtor's reliance on subsection (b)(5) is misplaced.

### 1. Bifurcation cannot occur under Section 1322(b)(5).

By its terms, Section 1322(b)(5) does not provide any license for *modification* of secured claims, through bifurcation or otherwise. Hence, if the Debtor purports to premise treatment of secured claims exclusively upon that subsection, bifurcation cannot be an element of the Plan. Bifurcation can only occur under the modification license of subsection (b)(2). Consequently, a Hybrid Plan's treatment of mortgage claims is necessarily premised upon subsections (b)(2) *and* (b)(5). And as has already been established here, any attempt to modify a claim pursuant to subsection (b)(2) requires compliance with the plan distribution time limitations of Section 1322(d). *Accord In re Hussain*, 250 B.R. 502, 508–9 (Bankr.D.N.J.2000).

### 2. Section 1322(b)(5) is "subject to" Section 1322(d).

■ Even if Section 1322(b)(5) could be construed to permit the modification inherent in bifurcation, it would not change this

---

11. The Court assumes that the Debtor also intends to make contractual payments *after* the Plan term has expired, but only until the

secured components of the various mortgage claims are fully paid.

Court's analysis since subsection (b)(5), like subsection (b)(2), is subject to the five-year plan limitation of subsection (d). *See* fn. 10, *supra; cf. In re Elliott,* 214 B.R. 148, 153 (6th Cir. BAP 1997) ("the only limitation under § 1322(b)(5) is the time limit set forth under § 1322(d)"). Several courts have held otherwise. *See e.g., In re McGregor,* 172 B.R. 718, 721 (Bankr. D.Mass.1994) (pre–1994 Amendment case containing oft-cited *dicta* ). Yet this Court can identify no principle of statutory construction which would permit it to distinguish subsection (5) from all other enumerated subparts of Section 1322(b) with reference to the effect of the mandate of subsection (d). *McGregor* and its progeny focus, if at all, on the fact that subsection (b)(5), by its terms, addresses claims "on which the last payment is due after the date on which the final payment under the plan is due" (hereafter, the "Long Term Debt Reference"). In essence, these authorities interpret the Long Term Debt Reference as a license for long term *treatment, i.e.* treatment which extends beyond the permissible duration of a plan. Yet this court can formulate no reasonable construction of subsection (b)(5) under which the Long Term Debt Reference could be read as a substantive license. Instead, that Reference merely *identifies* the *type* of claim to which a "cure and maintain" plan can be addressed. Finally, the Prefatory Language of Section 1322(b) explicitly renders *all* of its enumerated subparts subject to the time constraint of Section 1322(d). *See* fn. 10, *supra.*

### 3. Debtor's use of a Hybrid Plan is not supported by any binding judicial authority.

The Chapter 13 Trustee argues that the Second Circuit Court of Appeals' opinion in *Bellamy* supports the use of a Hybrid Plan premised upon Section 1322(b)(5). While acknowledging that the central holding of *Bellamy* was overruled by *Nobelman,* the Trustee nonetheless relies on language which she believes was unaffected by *Nobelman,* to wit:

> In light of the goals of Chapter 13, § 1322(b)(2) and (5) must be read as allowing a debtor to reinstate in its stripped down form a residential mortgage that comes due beyond the life of the plan. The debtor must cure arrearages within a reasonable time, *see* § 1322(b)(5), but need make scheduled mortgage payments only until the secured claim is fully paid .... Such treatment of a residential mortgage lender's secured claim is neither a *modification* prohibited by § 1322(b)(2) nor does it implicate §§ 1325(a)(5)(B) or 1322(c) [now 1322(d)].

962 F.2d at 185 (emphasis supplied).[12] While this language admittedly supports the use of a Hybrid Plan, the fact of the matter is that, contrary to the Trustee's contention, this passage *was* overruled by *Nobelman.* The concluding statement, "[s]uch treatment of a residential mortgage lender's secured claim is neither a modification prohibited by § 1322(b)(2) nor does it implicate §§ 1325(a)(5)(B) or 1322(c) [now (d) ]" reveals *Bellamy's* crucial dependence upon the proposition that bifurcation is *not* a modification. As discussed *supra, Nobelman* held that bifurcation *is* a modification. Thus any of the *Bellamy* court's conclusions that are premised upon its belief that bifurcation is *not* a modification are not dispositive or authori-

---

**12.** A transcript of the oral argument in this matter indicates that the Trustee's attorney purported to recite the foregoing passage verbatim, calling it a "direct quote". Nonetheless, the transcript reveals that counsel omitted several words and phrases, including the critical word "modification" in the final sentence.

tative in the instant dispute. In point of fact, *Bellamy* is directly *supportive* of this Court's construction of Chapter 13. In holding that a secured claim is "not ... modified" through bifurcation, and "therefore need not be paid off within the life of the plan", 962 F.2d at 185, *Bellamy* impliedly observed that a claim that *is* modified *must* be paid off within the life of a plan.

 This Court is also not bound by its own prior confirmation of Hybrid Plans, or by a decision of the United States District Court for the District of Connecticut on appeal of one such ruling. *In re Kinney,* Case No. 97–34118, Doc. I.D. No. 79 (Bankr.D.Conn. Aug. 7, 1998) (unpublished margin endorsement overruling objection to plan confirmation), *aff'd* Civil Action No. 3:98CV1753 (CFD), slip op. at 8–13 (D. Conn. April 12, 2000). As this Court has previously observed, "a judge of the bankruptcy court—a unit of the district court ...—is not bound by the decision of a single district judge." *Daly v. Deptula, et al. (In re Carrozzella & Richardson),* 255 B.R. 267, 272 (Bankr.D.Conn.2000) (citations omitted). This Court is naturally reluctant to dissent from established district authority, especially when that authority is partly of its own making. However, upon the more considered reflection afforded by this matter, the Court respectfully departs from prior authority in favor of a statutory construction which accurately harmonizes the plain meaning of the relevant Code Sections with controlling judicial authority and underlying legislative intent.

### F. Practical Considerations.

This Court's construction of Section 1322 is also consistent with the principal legislative purposes of Chapter 13—minimization of creditor loss, preservation of debtor property, and facilitation of the debtor's "fresh start". *See* H.R.Rep. No. 595, 95th Cong. 1st Sess. 117–18 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6077–78. This Court's view does not undermine the use of Chapter 13 as a mechanism for *preservation* of property from impending foreclosure. Mortgaged property can be preserved in at least two ways. Some debtors will be able to preserve such property by bifurcating a secured creditor's claim and paying the full present value of its secured component within the plan term. Other debtors, who do not have the wherewithal to amortize the secured component during the life of the plan, may still preserve their property from foreclosure by curing any default—*i.e.* paying the pre-petition arrearage in full—during the term of the plan, while maintaining current contractual payments outside the plan.[13]

This Court acknowledges that for the latter group of debtors, *i.e.* those who do not have sufficient income to satisfy fully a secured claim component during a plan, this opinion may limit the extent of the *ancillary* relief available under Chapter 13. Specifically, it may disable that subset of debtors from reaping the economic windfall of bifurcation.[14] However, be-

---

13. Chapter 13 affords even these debtors a significant remedy unavailable under state law. While they are held to the economic terms of their original bargain, they are granted a significant deferment of the time within which their pre-petition defaults may be cured.

14. Bifurcation provides a debtor with a windfall over the bargain he made at the time of the origination of the subject secured debt by essentially permitting the principal balance of the debt to be reduced. The presence of such a windfall, unconstrained by the time limitation of Section 1322(d), would further encourage individuals not in true economic distress to utilize Chapter 13 simply to avail themselves of that windfall. As this Court has previously held, Chapter 13 was not designed

cause this Court views a debtor's ability to bifurcate an undersecured claim as more in the nature of a "head start" than a "fresh start", that limitation is consonant with Congressional purposes.

## V. CONCLUSION

Because the Debtor's Hybrid Plan does not pay the secured component of bifurcated mortgagee claims in full during the Plan term, it finds no license under the Bankruptcy Code. Accordingly, confirmation of the Debtor's Second Amended Chapter 13 Plan shall be DENIED. Because the Plan was conditionally confirmed subject to determination of this matter, an appropriate order shall enter.

## ORDER ON CONFIRMATION OF CHAPTER 13 PLAN

The above-captioned Second Amended Chapter 13 Plan (Doc. I.D. No. 74) came before this Court for confirmation on September 20, 1999, at which time the Court received the arguments of the Debtor, the Chapter 13 Trustee, and Bank of America and Chase Manhattan Bank—two secured creditors who had filed written objections (Doc. I.D.Nos.69, 70) to confirmation of the Debtor's First Amended Chapter 13 Plan. On that same day, with the consent of the parties, this Court entered an order (Doc. I.D. No. 77) *conditionally* confirming the Debtor's Second Amended Chapter 13 Plan, subject to the Court's further consideration of the issues raised by the objecting parties. Having fully considered the contentions of the parties, the Court issued this day its *Memorandum of Decision on Objections to Confirmation of Plan* ("Memorandum of Decision"), in accordance with which it is

to benefit such individuals. *In re Rodriguez,*

**ORDERED** that this Court's Order of September 20, 1999 (Doc. I.D. No. 77) is hereby **VACATED**; and

**IT IS FURTHER ORDERED** that confirmation of the Debtor's Second Amended Chapter 13 Plan is **DENIED** without prejudice to the filing, on or before November 15, 2002, of a further amended plan consistent with the Memorandum of Decision; and

**IT IS FURTHER ORDERED** that a hearing shall be held on November 21, 2002 at 11:45 a.m., to consider (i) confirmation of any timely amended plan proposed by the debtor, or (ii) the proper disposition of funds held by the Chapter 13 Trustee and/or others; and (iii) such other and further relief as is just and proper.

248 B.R. 16, 19–20 (Bankr.D.Conn.1999).