**In re SIS CORP. and Sisters International, Inc., Debtors.**

**Bankruptcy Nos. B89–00800, B89–00801.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Oct. 18, 1990.

See also 108 B.R. 608.

Michael D. Schenker and Bruce L. Waterhouse, Jr., Kelley, McCann & Livingstone, Cleveland, Ohio, for debtors.

Daniel McDermott, Cleveland, Ohio, Atty. for U.S. trustee.

Robert E. Dill, Columbus, Ohio, for Toledo Great Southern Shopping Center Inc. and Toledo Town and Country Miracle Mile Shoppers Mart, Inc.

John Sweeney, Westlake, Ohio, for committee of unsecured creditors.

Alan R. Lepene, Cleveland, Ohio, for Soc. Nat. Bank.

Hilbert S. Rader, Bay Village, Ohio, pro se.

Marvin Sicherman, Cleveland, Ohio, for U.S. West Financial Inc.

Michael E. Jackson, Cleveland, Ohio, for Franchise Finance Corp. of America.

John Paris, Cleveland, Ohio, for Ohio Edison Co.

F. Wilson Chockley, Jr., Cleveland, Ohio, for WJW–TV8.

Mark I. Wachter, Cleveland, Ohio, for Goldome Credit Corp.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The Debtors, Sis Corp. and Sisters International, Inc. (Debtors) are before the Court for a confirmation hearing on their amended joint plan of reorganization (Plan). Although characterized as "reorganization", it is undisputed that the Plan proposes a liquidation of the Debtors' assets. By way of chronology, the Debtors caused to be filed their voluntary petitions for relief under Chapter 11 on February 28, 1989. Their joint disclosure statement was submitted and was approved following a hearing before this Court. In pursuance of that approval, the Debtors solicited the Plan among their several creditors for the required balloting. Following the completion of that process, with notice having been given to all entitled parties, the Plan is now before the Court to determine whether there is compliance with the confirmation requirements of § 1129 of the Bankruptcy Code [11 U.S.C. 1129]. Based upon the Court's detailed examination of the Plan, its supporting documentation, arguments of counsel, and the record generally, confirmation of the Debtors' Plan is hereby denied in view of the findings and conclusions contained herein.

### I.

The Debtors' joint Plan contained ten classifications of claimants. As indicated from the Plan's Voting Summary, which was unopposed, the requisite number of votes were received to obtain acceptance of the Plan as required by § 1126 of the Code. The corresponding dollar amounts of claims represented by the votes, likewise, satisfied the requirements of § 1126. Among the ten classifications of claimants voting, six classes accepted, one class was a deemed acceptance, while one class (Class No. 4, U.S. West) rejected the Plan and two classes were deemed rejections.

### II.

There are thirteen requirements to be met by a plan proponent before plan confirmation can be achieved in Chapter 11. *See Colliers*, 1129.01[1], 5th ed., 1989. Those conditions are rather specific and are set forth at 11 U.S.C. 1129(a)(1)–(13) and (b). The Bankruptcy Code is silent to indicate that other conditions are required for confirmation. As a matter of federal law, plan confirmation is totally addressed under 1129(a) and (b). Where those requirements have been met to the Court's satisfaction, a

plan is confirmable. Additional conditions precedent to plan confirmation which are imposed by the Plan's proponent are improper and, potentially, can serve to defeat any prospect of confirmation.

Confirmation of a consensual plan is addressed under § 1129(a) of the Bankruptcy Code and requires compliance with each of its conjunctive elements unless the plan is appropriate for confirmation under the cram down provisions of § 1129(b). In brief, the confirmation of a consensual plan under § 1129(a) allows junior classes to receive value in the reorganized debtor even though senior classes are not fully compensated. This is allowed as long as the senior classes are given a value that would not be less than what they would receive in a liquidation. *See, Fundamentals of Bankruptcy Law,* Triester, et al., p. 373 (1987). On the other hand, no value is to be given a junior class under the plan unless the senior dissenting class has been fully compensated in a plan where one or more impaired classes do not consent to confirmation. *See,* 11 U.S.C. 1129(b).

■ At the time of plan confirmation hearing, a plan's execution must be feasible, in addition to the other twelve conditions for confirmation. *See,* 11 U.S.C. 1129(a)(11); *See, Tennessee Publishing Co. v. American National Bank,* 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13 (1936). Of the thirteen confirmation requirements set forth in 1129(a), only one is permissive while the others are mandatory. Feasibility, addressed under 1129(a)(11), is mandatory and must be determined at the confirmation hearing. A plan submitted on a conditional basis thwarts this legislative intent and therefore renders a plan infeasible. Where this occurs, plan confirmation must be denied, as the several conditions enumerated under 1129(a) must be satisfied conjunctively, except for the proviso involving 1129(a)(8) and 1129(b)'s cram down provision.

■ In addition to the confirmation requirements of § 1129(a) and (b), the present Debtors condition the implementa-

tion and consummation of their plan on three conditions precedent set forth at Article VII of their Plan. The first condition subjects plan implementation and consummation to the finalization a prior ruling of this Court entered on December 21, 1989. The import of that particular condition is unclear as a final judgment was entered on the matter [1] ordered by this Court. See, Memorandum of Opinion and Order, 12–20–89 and its Judgment entered on 12–21–89. The Debtors' second condition precedent hinges on the availability of sufficient cash to satisfy all administrative claims, allowed priority claims, and allowed tax claims. Thirdly, the Plan's implementation is conditioned upon the Plan's confirmation order providing for retention of property in the Debtors' estate pursuant to Plan § 6.3 and further providing for an injunction pursuant to Article X of the Plan. In its conclusion, Plan § 7.3 provides:

> Notwithstanding entry of the Confirmation Order, if, on or before the Effective Date, the Conditions set forth in this Article VII have not been satisfied or waived in writing by Debtors, the Plan shall be void and of no effect.

The above conditions precedent remove the certainty of plan implementation required to be in place as of the time of a confirmation hearing. The above-quoted language is clear to state that such conditions must either be satisfied or waived by the Debtors. Effectively, those conditions imposed by the Debtors leave the affected claimants at the mercy of the Debtors, in total disregard of the confirmation process. Such an approach renders the Plan infeasible.

■ The confirmability of a plan is the sole province of the Court, as dictated by the statutory provisions of § 1129 of the Bankruptcy Code. The authority vested in the Court in this regard is not delegable to the proponent of a plan. In fact, the order confirming a plan is binding upon a debtor, any entity acquiring property under the plan, and any creditor, equity holder, etc.

---

**1.** Subsequent to the entry of the Judgment, the matter was appealed to the district court. No motion to stay matters pending appeal was filed by the appellant.

*See*, 11 U.S.C. 1141(a); *In re White Farm Equipment Co.*, 38 B.R. 718, 724 (N.D.Ohio 1984).

### III.

Generally, confirmation of a debtor's plan discharges the debtor from debts which arose preconfirmation, unless the plan or confirming order provides otherwise. *See*, 1141(d)(1); *In re White Motor Credit Corp.*, 37 B.R. 631 (N.D.Ohio 1984), *aff'd*, 761 F.2d 270 (6th Cir.1985). An exception to the broad discharge provided in Chapter 11 is found in liquidations under Chapter 11. Where the plan calls for all or substantially all of the debtor's assets to be liquidated, the debtor is not entitled to receive a discharge under Chapter 11. *See*, 11 U.S.C. 1141(d)(3).

■ Section 6.3 of the Debtors' Plan is entitled "Plan Implementation; No Revesting". Therein, *inter alia*, the Debtors provide:

"Debtors shall have no obligation or liability on account of Claims, Stock Interests, or Stock Option Interests except as expressly stated in the Plan". See, Plan § 6.3, p. 36.

Ordinarily, in a plan which seeks to reorganize a financially distressed debtor, the above-quoted language would be acceptable. In a liquidating Chapter 11 plan, however, the language is problematical. The effect of this language, if approved, is to provide the Debtors with a discharge on those specific obligations which are not otherwise treated in the Plan. Such an effort is contrary to the letter and intent of § 1141(d)(3) of the Code. In pertinent part, this section provides:

The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate. 11 U.S.C. 1141(d)(3)(A).

The Debtors' cases are liquidating Chapter 11 cases. As such, § 1141(d)(3)(A) clearly prevents the Debtors from obtaining any type of discharge since their intent under the Plan is to sell all or substantially all of their estate property. Therefore, as

Plan implementation for the Debtors is conditioned upon the Court's approval of § 6.3, that specific portion of § 6.3 is statutorily impermissible and unenforceable. For this additional reason, the Plan is not feasible.

Similarly, language contained in Article X of the Plan, at § 10.1, is also not in conformity with § 1141(d)(3)(A). Although characterized as "Injunction", § 10.1 provides that:

... Subject to terms of the confirmation order, all holders of claims ... shall be precluded from asserting against Debtors or Debtors' estates, or any of their assets or properties, or any purchasers of any property of Debtors or Debtors' estates, and other further claims....

This language, likewise, attempts to impermissibly exact a discharge on certain obligations unless otherwise treated in the Plan. For the aforementioned reason, this is in derogation of § 1141(d)(3). In this same Plan § 10.1, the Debtors provide that claim and equity holders would be enjoined from asserting claims against third parties who would purchase assets during asset sales. Although their intention is understood, § 362(c) of the Code provides that the automatic stay injunction only continues until the property is no longer estate property. *See, United States v. Allen Bros. of Homer, Inc.*, 36 B.R. 920, 923 (D.D.C.1984). The injunctive provision of § 362(a) is therefore not indefinite. Further, the injunctive effect of § 362 is only protective of the debtor's estate and not primarily for the benefit of third parties who may come into contact with a debtor's estate. *Id.* Thusly, the language in § 10.1 which provides that:

.... such injunction shall expire only as to Debtors at the time the Chapter 11 cases are closed or dismissed.

is illusory at best. Again, since the confirmation is conditioned upon the Court's approval of Plan Article X, that provision, to the extent addressed herein, is not feasible.

### IV.

Under § 1129(b) of the Bankruptcy Code, [11 U.S.C. 1129(b)], a plan may be con-

firmed over the objection of a dissenting impaired class or classes if the plan does not discriminate unfairly and is fair and equitable to such creditor class. This is an exception to the confirmation requirement of § 1129(a)(8) which requires every impaired class to accept the plan before confirmation can be achieved. Consequently, § 1129(b) is commonly referred to as the "cram down" provision of the Code.

In the present plan, the Debtors seek to obtain confirmation over the objection of U.S. West which is an impaired secured creditor that has voted to reject the plan as proposed. Specifically, at § 5.4 of the plan, U.S. West's claim is designated as the sole member of Class No. 4, and is to be accorded its choice of four (4) alternative treatments which, if either is accepted, would purportedly provide "full satisfaction, settlement, release, and discharge of the U.S. West Secured Claim...." The four alternative treatments offered U.S. West by the Debtors are as follows:

(a) Subject to the written consent of U.S. West and the execution of appropriate written agreement(s), and subject to any required approval of the Court, the obligations represented by the U.S. West Secured Claim shall be apportioned and allocated between the real property, fixtures, and equipment of the two (2) separate stores of Debtors securing the U.S. West Secured Claim as specified in the two (2) Open–End Mortgages and Security Agreements (such real property, fixtures, and equipment being hereinafter referred to as "U.S. West Collateral"), and each of the separate properties shall either be sold, transferred and conveyed subject to the obligation of the U.S. West Secured Claim as so modified, with the purchaser(s) assuming in writing such obligations, or sold, transferred, and conveyed free and clear of such obligation, with the lien of U.S. West, as so modified, to attach to the proceeds of such sale; or,

(b) Notwithstanding any restrictions in the documents evidencing the U.S. West Secured Claim, the U.S. West Collateral shall be sold, transferred, and conveyed subject to U.S. West's security interests,

and the purchaser shall assume the obligations to pay the U.S. West Secured Claim pursuant to the terms of the Agreed Order Granting in Part Combined Motion of U.S. West Financial Services, Inc. for Relief from Stay and Adequate Protection, entered by the Court on July 27, 1989 in the Chapter 11 Cases, a copy of which is attached hereto as Exhibit "A", and incorporated herein; or

(c) Subject to the provisions of Section 363(k) of the Code, the U.S. West Collateral shall be sold, free and clear of the U.S. West Secured Claim and all liens and security interests of U.S. West therein, with such liens and security interests to attach to the proceeds of such sale, and, subject to other applicable provisions of the Code, with such proceeds to be distributed to U.S. West to the extent of its Allowed Secured Claim, with the balance to be treated as Disposition Assets hereunder; or

(d) The U.S. West Collateral shall be distributed, turned over, and surrendered to U.S. West.

U.S. West shall retain its liens and security interests in the U.S. West Collateral until (i) the U.S. West Secured Claim is repaid, in the event of any sale subject to the U.S. West Secured Claim, or (ii) the date of any sale, in the event of any sale free and clear of the U.S. West Secured Claim, or (iii) the date of any distribution, turnover, and surrender under (d), above. Class 4 is impaired.

In response to those offered treatments, U.S. West argues that either or all of the four alternative treatments are inadequate as they each lack certainty of performance. Further, U.S. West asserts that a fair and equitable treatment on its claim should include: (1) payment in full or; (2) prior consent of U.S. West before any sale related to its claim is executed; or (3) the amount due U.S. West on its claim from the proposed sale proceeds be placed in escrow. In summary, U.S. West contends that § 1129(b)(2)(A)(ii) requires certainty relative to a proposed sale. In response, the Debtors asserted that the concerns of U.S. West are fully addressed at plan

§ 5.4(c), although they would not object to U.S. West amending its claim in the event of a deficiency at the proposed sale of assets.

In view of the parties' respective arguments, the provisions of Plan § 5.4, and the requirements of § 1129(b) of the Code, the alternative treatments offered by the Debtors do not provide a fair and equitable treatment to the claim of U.S. West. In pertinent part, § 1129(b) provides:

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Under § 1129(b), the factors for determining compliance with the fair and equitable standard as it pertains to secured claims is addressed under § 1129(b)(2)(A). Therein, that standard is satisfactorily met where (1) the Plan allows the dissenting impaired secured claimant to retain its lien to the extent of the allowed amount of its claim and (2) such secured claimant receives on account of its claim deferred cash payments totalling at least the allowed amount of its claim as of the plan's effective date. Further, where a proposed sale affects the dissenting impaired secured creditor's lien, such lien is to attach to the proceeds of sale or such claimant is to be offered the indubitable equivalent of its claim.

■ As indicated above, if the Debtors opt to provide the alternative treatment stated in Plan § 5.4(c), this would be an attempt to comply with the cram down provision addressed under § 1129(b)(2)(A)(ii). Plan § 5.4(d)'s alternative treatment, if exercised by the Debtors, would apparently constitute an effort to provide compliance with § 1129(b)(2)(A)(iii). Plan § 5.4(b), however, does not appear to comply with the requirements of § 1129(b)(2)(A)(i) which requires that the dissenting impaired secured claimant be allowed to retain its lien and receive, on account of its claim, deferred cash payments totalling at least the allowed amount of its claim as of the effective date of the plan. Apparently, Plan § 5.4 would allow U.S. West to retain its lien, but the requirement of § 1129(b)(2)(A)(i)(II) regarding deferred cash payments being valued as of the Plan's effective date is unsatisfied. This deficiency in the Debtors' joint Plan is troublesome for two reasons: (1) the Plan's effective date is ill-defined and (2) the alternate treatments set forth under Plan § 5.4 are speculative.

Under Article I of the Plan, "Definitions", Plan § 1.34 defines "Effective Date" as meaning "—that date which is not later than (30) days following the Confirmation Date (subject to any Court-approved extension of same) and on which all conditions to the effectiveness of the Plan expressly set forth in the Plan have been satisfied fully or have been expressly waived in writing by Debtors." See, Plan, Article I, § 1.34, p. 8. As defined, the Plan's effective date lacks certainty and is therefore speculative. Conditioning the viability of a plan's effective date upon other conditions precedent renders a purported effective date useless to affected claimants and the Court for confirmation purposes. In this respect, the secured claim of U.S. West is not accorded a fair and equitable treatment.

Secondly, the alternative treatments addressed under Plan § 5.4 lack certainty and, as such, are speculative. The prefatory language of § 5.4 is clear to indicate that the four alternative treatments are available to fully satisfy, settle, release and discharge U.S. West's secured claim only "at the option of and from [the] Debtors." See, Plan § 5.4, p. 24. Such wide discretion vested in the Debtors neither provides U.S. West or the Court with any certainty that U.S. West would ever receive any treatment under the Plan. This deficiency impacts directly on the Plan's feasibility pursuant to § 1129(a)(11). As an impaired secured creditor, U.S. West, at a minimum,

must be provided the measures afforded under § 1129(b)(2)(A), or the cram down attempt is of no effect. Herein, the treatment required under § 1129(b)(2)(A) has not been satisfied with respect to U.S. West's secured claim. Accordingly, no consensual plan is presented for confirmation, and plan confirmation cannot be achieved under § 1129(b) for the reasons stated herein.

## V.

In summary, the conditional character of the Plan causes it to lack definiteness and the requisite certainty for confirmation. Further, the Debtors' attempt to cram down a secured creditor, U.S. West, is deficient due to its lack of certainty of performance. Accordingly, the Plan is not feasible, and confirmation is hereby denied.

This hearing on plan confirmation constitutes the Debtors' second effort to obtain confirmation. Earlier, on the eve of a prior confirmation hearing, the Debtors withdrew their proposed plan of reorganization due to a lack of adequate capital to fund the Plan. Consequently, the Court was informed that the Debtors would submit a plan for liquidating the Debtors' assets, which is reflected in the present Plan. Having failed to obtain confirmation, the Debtors are hereby ordered to appear and show cause why their cases should not be dismissed or converted for liquidation proceedings under Chapter 7 of the Bankruptcy Code on November 14, 1990 at 10:00 A.M.

IT IS SO ORDERED.