**In re RALPH C. TYLER, P.E., P.S., INC., Debtor.**

**Bankruptcy No. B92–14450.**

United States Bankruptcy Court, N.D. Ohio, E.D.

July 30, 1993.

Steven S. Davis, Rabb & Davis, Cleveland, OH, for debtor.

Arthur I. Harris, Asst. U.S. Atty., Cleveland, OH.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter came before the Court for a hearing on confirmation of the Debtor's Second Amended Plan (Plan). The Internal Revenue Service has withdrawn its objection and no other objections have been filed. The Plan contains several deficiencies, noted below, and is disapproved.

The Plan contains a waiver of claims of the estate. Specifically, the Debtor/Debtor–In–Possession (DIP) has claims against the Class 9 creditors, the shareholders of the DIP. Such a waiver, under the circumstances presented here, contravenes bankruptcy law. Support for this

conclusion may be drawn from several sources. First, the primary purpose of a discharge in bankruptcy is to give an honest debtor a fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934); H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977). A discharge in bankruptcy is not for the benefit of anyone other than the debtor, including those who are co-obligors with the debtor or who owe a debt to the debtor. *For example, see,* 11 U.S.C. § 524(e). Thus, the DIP's petition and confirmation of a plan should not benefit the DIP's obligors by providing a waiver of their obligations to the DIP. Second, a waiver of the DIP's claims is in contravention to the duties imposed upon the DIP under 11 U.S.C. § 1107(a). The DIP is clothed with the rights and duties of a trustee and as such is obligated to collect property of the estate in order to maximize the estate's value. *See, Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 246 (5th Cir.1988). Thus, actions against corporate officers, directors and shareholders that may yield a benefit to the estate must be pursued. *Id.* Third, due to the unliquidated nature of the DIP's claims against the Class 9 creditors, the proposed waiver is in the nature of a compromise of said claim. Although the DIP may settle claims, [11 U.S.C. § 1123(b)(3)(B) ], the Court retains authority to approve or disapprove a settlement or compromise. *See, In re Allegheny Intern, Inc.*, 118 B.R. 282 at 313–314 (Bankr.W.D.Pa.1990). Finally, the Bankruptcy Court has considerable authority to interfere with management of the DIP to protect creditors' interests. *Matter of Gaslight Club, Inc.*, 782 F.2d 767, 770 (7th Cir.1986); 11 U.S.C. §§ 105(a) and 1107(a). Here, the DIP has not provided the creditors or the Court with sufficient information regarding the nature of the claims being waived. At this juncture, prohibition of the DIP's waiver of its claims against insiders is mandated for the protection of creditors.

▮▮▮ The Plan's effective date is imprecise. The Plan has a distribution date of "any date, subsequent to the effective date." The Bankruptcy Code specifically provides that certain distributions must be made on the effective date. 11 U.S.C. §§ 1129(a)(9). *See, In re Terex Corporation*, 984 F.2d 170, 174 (6th Cir.1993). Section 1124(3), which is part of the impairment statute, also states that payment must be made on the effective date of the plan. Unless § 1124(3) is complied with, it cannot be used as a basis for categorizing a class as unimpaired and therefore deem such class to have accepted the plan. Indeed, although the Code does not define "effective date," such was provided to give the Court a reference date to make the valuations required under the Code. 5 *Collier on Bankruptcy* para. 1124.03[7] (15th Ed.1993). Thus, although the Plan may contemplate multiple payments or distributions, the Plan must clearly comply with §§ 1124(3) and 1129(a)(9), giving the Court an effective date on which certain payments must be distributed in order to be confirmable.

▮▮▮ The Plan references that some of its funding will be from preference actions. The DIP, however, has completed a preference analysis and finds that no preferences exist. Thus, this particular funding source is untenable and must be deleted. The Plan also provides for financing from outside sources. The Plan, however, does not indicate that there is firm financing in place and no evidence of any commitment to such financing has been provided to the Court. At the point of confirmation, this source of funding must be shown to be firm as it goes directly to feasibility. *See,* 11 U.S.C. §§ 1112(b)(1) and (2); 1129(a)(1) and 1129(a)(11). Without evidence of a firm commitment of financing, this Plan does not meet the feasibility requirement.

For the foregoing reasons, the Plan is disapproved, said disapproval being without prejudice to amendment of the Plan.

IT IS SO ORDERED.