**In re The CHRISTIAN FAITH ASSEMBLY, Debtor.**

No. 07–19234.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 20, 2009.

Frederic P. Schwieg, Cowden & Humphrey Co. LPA, Cleveland, OH, for Debtor.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The Christian Faith Assembly, Inc., (Debtor, Debtor–in–Possession) seeks approval of its Amended Plan of Reorganization. Buckeye Community Bank (Buckeye), a secured creditor, objects to plan confirmation. Jurisdiction is proper under 28 U.S.C. §§ 1334 and 158 and General Order No. 84 of this District. Upon the conclusion of a duly noticed evidentiary hearing, an examination of the evidence admitted, and a review of the record, generally, the following findings of fact and conclusions of law are hereby rendered:

*

The Debtor, The Christian Faith Assembly, Inc., is a church established in April of 1966 under the name All Nations Tabernacle Oneness Pentecostal Church. In 1986, the Debtor's name was officially changed to Christian Faith Assembly. The Debtor's primary asset is the Church, which was purchased on June 16, 2000 for $245,000. The purchase price was paid with proceeds from a loan from Buckeye in the original amount of $388,000. That amount was secured by a mortgage on two properties. Approximately one year later, in May of 2001, the Debtor borrowed an additional $212,000 from Buckeye, which was secured by a second mortgage on the same two parcels. The additional borrowed funds were used to construct a new building and to renovate the existing buildings. On May 16, 2003 Buckeye released the second parcel from the two mortgages and the remaining amounts due were consolidated into one promissory note in the amount of $599,856.37.

After a dispute concerning the application of payments due under the loan, Buckeye commenced a foreclosure action against the Debtor in Lorain County Common Pleas Court.[1] Subsequent to the filing of this foreclosure action, the Debtor borrowed funds from a third party and placed those funds into an account at Buckeye. Buckeye seized those funds and applied them to the outstanding balance owed. The Debtor hired an accountant who analyzed the payments tendered and discovered that Buckeye had overcharged the Debtor, resulting in overpayments by the Debtor. The Debtor was, in fact, current with its loan payments. Consequently, Buckeye voluntarily dismissed its first foreclosure action.

Relations between the two parties continued to deteriorate. Ultimately, the Debtor ceased making monthly payments and, on October 2, 2006, the Bank filed its second foreclosure action in Lorain County Common Pleas Court.[2] On July 7, 2007, a judgment for foreclosure was entered in favor of Buckeye and an Order of Sale was issued to the sheriff. Prior to the scheduling of the sale in foreclosure, the Debtor and Buckeye reached an accord, and the sale of the Church was rescinded. The Debtor defaulted on the terms of the agreement. Subsequently, a second Order of Sale was issued on November 29, 2007. Prior to the scheduling of a second Order of Sale, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 5, 2007.

On May 5, 2008, the Debtor filed its initial plan of reorganization. This Plan was duly considered and was denied confirmation. (See Order dated November 4, 2008). This Court allowed the Debtor a

---

1. Case No.: 06CV144955

2. Case No.: 06CV147922

second opportunity to achieve plan confirmation through the filing of an amended plan of reorganization. The latter plan is presently before the Court for approval consideration.

\* \*

The dispositive issue is whether the Debtor's plan, as amended, satisfies the feasibility requirements of § 1129(a) or (b) of the Bankruptcy Code [11 U.S.C. § 1129(a) or (b)].

\* \* \*

Section 1129 provides the requirements needed to confirm a Chapter 11 plan. At issue in this case are subsections (a)(1), (a)(7), and (a)(11), which provides in relevant part:

a) The court shall confirm a plan only if all of the following requirements are met:

1) the plan complies with the applicable provisions of this title . . .

7)with respect to each impaired class of claims or interests—A) each holder of a claim or interest of such class—I) has accepted the plan; or ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount of such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date; or B) if Section 1111(b)(2)(b) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims . . .

11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liqui-dation or reorganization is proposed in the plan.

*11 U.S.C.A. § 1129.*

\* \* \*

The Debtor contends that its amended Plan is confirmable under § 1129(b), and that the "best interests" test of § 1129(a)(7) is satisfied.

Buckeye Bank, holder of a first lien against the Debtor's real property, contends that the Debtor's Plan is infeasible. It further asserts that the Debtor owes an undisputed $551,463.73 on its secured debt, subject to certain setoffs. It further asserts that certain remediation costs are excluded from the Debtor's financial projections. It further asserts, upon a liquidation analysis, that the current plan provides lesser payment on its allowed claim than would be realized under Chapter 7 liquidation of Debtor's assets. Lastly, Buckeye contends that the Debtor's projected income is insufficient to pay anticipated operating expenses and allowed claims as contemplated by the second Plan.

\* \* \* \* \*

*The Plan*

The Debtor's second Amended Plan provides for five (5) creditor classes. Class One addresses secured claimants. Class Two addresses administrative claimants. Class Three is for priority tax claims, while the fourth class treats general unsecured claims. Class Five addresses equity. The plan sets forth in its definition section an effective date by which these claims will be paid. According to the plan, the effective date is defined as ten (10) days after the issuance of the Confirmation Order, so long as the Confirmation Order is a Final Order, or any other time thereafter as may be determined by the Reorganized Debtor. (See, Plan). The Debtor

proposes to fund this plan with the establishment of a Child Care Facility whose projected opening date was set for February 1, 2009.[3] The Debtor believes that it will take approximately twelve (12) months until the Child Care will operate at full capacity. Until then, the Debtor proposes to pay salaries of the Child Care's employees from the Debtor's own income. The Debtor does not expect to receive revenues from this Child Care facility to fund this Plan, until April of 2009. At that time, the Debtor proposes to pay $1,000 a month to the plan and expects to increase the payments by $1,000 each additional month until December 2009. By then, the Debtor projects that the monthly payments should reach $9,000.

This Plan was voted on by all creditors whose claims or interest are impaired. Of the two creditors that were eligible to vote, one creditor voted for the plan and the other creditor, Buckeye, rejected the plan. Consequently, the Debtor seeks to utilize the cram down requirements set forth in § 1129(b) for confirmation purposes. In order for a plan to be confirmable under § 1129(b), the Debtor must show that the Plan, even if it has not been accepted by all impaired classes, has been accepted by at least one impaired class of claimants and that the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims" that is impaired under the plan and has not accepted the plan. *See, 11 U.S.C. § 1129(b)*. The Debtor contends that the plan does meet these requirements and therefore, notwithstanding § 1129(a)(8), which requires acceptance of the plan by each impaired class, its plan should be confirmed.

 Under the Bankruptcy Code, confirmation of a Chapter 11 plan generally acts as a discharge of a debtor's pre-petition obligations and establishes new contractual relationships between the parties. 11 U.S.C. § 1141(d)(1)(A); *See, In re Ridgewood Apartments of DeKalb County, Ltd.*, 183 B.R. 784, 789–90 (Bankr.S.D.Ohio 1995). Concern for that effect and the explicit mandate of § 1129(a) require the proponent of a Chapter 11 plan to establish all prerequisites for confirmation under that section. *In re Laurel Glen Apartments of Acworth, Ltd.*, 139 B.R. 199, 200–201 (Bkrtcy.S.D.Ohio, 1991). The Court cannot confirm a Chapter 11 plan unless the proponent of the plan shows by a preponderance of the evidence all of the requirements under § 1129 are met, including feasibility. *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Partnership (In re Ambanc La Mesa Ltd. Partnership)*, 115 F.3d 650, 653 (9th Cir.1997), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998); *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1165 (5th Cir.), *cert. denied*, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993); *In re Trevarrow Lanes, Inc.*, 183 B.R. 475, 479 (Bankr.E.D.Mich.1995) (citing *Briscoe Enterprises, Ltd., II* and other cases). Of the thirteen listed requirements of § 1129, each is mandatory and conjunctive, except for subsection (a)(8), which is currently not at issue here.

Upon confirmation, the debtor must show that the plan meets the requirements of § 1129(a) or (b). The first subsection at issue in this case is § 1129(a)(1) which requires the debtor's plan to comply with all provisions within this title. The Debtor has failed to comply with all provisions, and by virtue, this plan is unconfirmable, as discussed below.

---

**3.** This date was subject to how quickly the Debtor could obtain approvals from the government.

Subsection 1129(a)(7), requires the plan to satisfy the "best interests" test. Here, creditors who are impaired by the plan who voted to reject the plan are protected by the "best interests" test. If a creditor votes to reject the plan, that creditor must receive, under the plan, at least what they would have received if the debtor were to liquidate under Chapter 7. *See, Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 North La Salle St. Partnership,* 526 U.S. 434, 441 n. 13, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999).

The Debtor contends that its Plan satisfies the "best interests" test, but according to the provisions of the Plan, the "best interests" test has not been satisfied. Within the Plan, the Debtor's effective date, the date in which creditors will be paid, is imprecise and is not well defined. The Debtor chose to define its effective date based on conditional terms. Consequently, if those conditions are not met, then the creditors holding a claim or interest would not receive payment. An imprecise effective date runs contrary to the requirements of § 1129(a)(9). Section 1129(a)(9) provides for certain distributions to be made on the effective date. If the effective date is undefinable, then the Debtor's plan can not comply with § 1129(a)(9) and with 1129(a)(1). *See, In re Ralph C. Tyler, P.E., P.S., Inc.,* 156 B.R. 995 (Bankr.N.D.Ohio 1993).

Feasibility of a Chapter 11 plan is essential to confirmation. Section 1129(a)(11) of the Bankruptcy Code provides that a plan can be confirmed only if "confirmation of the plan is not likely to be followed by the liquidation, or the need for further organization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." *11 U.S.C. § 1129(a)(11).* Section 1129(a)(11) prevents confirmation of "visionary schemes" that promises creditors more than what

the debtor can provide post-confirmation. *Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.),* 779 F.2d 1456, 1460 (10th Cir.1985). A plan is therefore, not feasible if it is submitted on a conditional basis. *In re Sis Corp.,* 120 B.R. 93 (Bankr.N.D.Ohio 1990).

Although it is not required for the plan to guarantee success, it must present a reasonable assurance of success. *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 649 (2d Cir.1988). To provide such reasonable assurance, a plan must "provide a realistic and workable framework for reorganization." *Crestar Bank v. Walker (In re Walker),* 165 B.R. 994, 1004 (E.D.Va.1994). *See also In re Howard,* 212 B.R. 864, 879–80 (Bankr.E.D.Tenn. 1997). The test for reasonable assurance is whether "the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Made in Detroit, Inc.,* 299 B.R. 170, 175–176 (Bkrtcy.E.D.Mich.2003). The court must determine that the debtor's financial projections presented to support the plan of reorganization are, "derived from realistic and reasonable assumptions which are capable of being met," if not, the plan is not feasible. *Ridgewood,* at 789–90. The court may use several factors to determine feasibility, which are: (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *In re Brice Road Developments, LLC,* 392 B.R. 274, 283 (6th Cir. BAP 2008).

This Court earlier addressed the issue of feasibility in *In re Ralph Tyler, P.E., P.S., Inc.* 156 B.R. 995, 997 (Bkrtcy.N.D.Ohio,

1993). Therein, the debtor sought to fund its plan with money generated from preference actions and "outside sources." After a preference analysis, the DIP found that no preference actions existed, therefore, no money could be generated from them. Thus, leaving "outside sources" as one of the only means to fund the plan. This Court found, however, that without evidence of a firm commitment of financing, (i.e. the "outside sources" were too remote) the plan failed to meet the feasibility requirement. *Id.*

■■■ The Debtor's plan, as amended, is infeasible. Once a debtor's proposed plan of reorganization is submitted to the court for confirmation consideration, its provisions must, inter alia, be unconditional. Before the Court is not the Debtor's first proposed plan, but, rather, its second proposal for plan confirmation. Its earlier plan was denied confirmation due to the lack of a feasible plan. The present amended plan, effectively, presents another proposed scenario containing the same deficiency—lack of a firm financial commitment to achieve plan payments to affected claimants.

■■■ Plan confirmation hearing is the quintessential objective of a bankruptcy case filed under Chapter 11. Not only must the required elements set forth under § 1129(a) or (b) be satisfied no later than the plan's confirmation hearing date, there must be a present and absolute certainty of the debtor's ability to fund the proposed treatments under the plan.

In its previous proposed plan, the Debtor intended to fund its plan from revenues derived from a liquidation of certain assets of the Debtor. As indicated above, that plan was denied approval upon the Debtor's lack of financial commitments at the time of the confirmation hearing. Upon denial of confirmation, the Court allowed the Debtor an opportunity to submit an amended plan for the Court's consideration.

In its present proposed plan, the Debtor proposes to fund its amended plan through the operation of a Child Care facility. The testimony adduced by the Debtor's witnesses was generally credible. It is clear from the testimony that, as of the confirmation hearing date, the Debtor had no Child Care facility and had not applied for a license to operate a Child Care facility. It further had obtained no required permits from the state, county, fire Marshall or other necessary authority to establish such a facility. Moreover, it was only upon the eve of the duly noticed confirmation hearing that the Debtor's board approved a resolution authorizing the Church (Debtor) to develop and operate a Child Care facility and only three (3) days prior to confirmation that the Debtor commenced preparation of a license application. (R. Brown, Direct).

Finally, the Debtor's five-year financial projections in support of its amended plan were considered. (See Exh. 3). The projections do not include all of the Debtor's expenses (Westerland, Re–Cross Exam). Particularly, they do not include any marketing costs relative to a proposed Child Care program. Also, no market assessment had been made by the Debtor to determine the need for the facility. It is further observed that only projected Church offerings are stated for the five-year projected payment period. Member tithes are deliberately excluded from those projections. This leaves only the collected "offerings" available to pay creditors. (M.Kurtz, Direct). Reverend Kurtz, who prepared the projections, further confirmed that the subject projections do not reflect the Debtor's total financial structure in terms of revenues and expenses. Clearly, the Debtor's plan, as amended, lacks the requisite financial firmness which would assure its affected claimants of a

definite funding mechanism to satisfy their respective claims. Notedly, no testimony of the Debtor's chief financial officer/financial secretary was addressed for the Court's consideration.

\* \* \* \* \* \*

Accordingly, confirmation of the Debtor's amended plan is hereby denied for lack of feasibility. The objection of Buckeye Community Bank is hereby sustained. Upon these same factual findings, and without further demonstration, the Debtor has failed to satisfy the cram-down provisions of § 1129(b). The Debtor's Plan is not fair nor equitable, and therefore, will unfairly discriminate against affected parties. Thusly, having twice failed to present a confirmable plan, the Debtor's case is hereby dismissed. Buckeye's motion for stay relief is therefore rendered moot. Each party is to bear its respective costs.

**IT IS SO ORDERED.**