### In re Thomas CHRISTOPHERSON, Debtor.

### No. 10–12971.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Feb. 28, 2011.

Amy M. Blythe, Irene A. Rennillo, Cleveland, OH, Gregory Stout, Cincinnati, OH, for BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P.

Edward J. Boll, III, Nathan Swehla, Cincinnati, OH, Holly N. Wolf, Manley Deas Kochalski LLC, Grandview, OH, for CitiMortgage, Inc.

Scott P. Ciupak, Reimer, Arnovitz, Chernek & Jeffrey, Twinsburg, OH, for OneWest Bank F.S.B.

Faye Dian English, Reimer, Lorber & Arnovitz, Twinsburg, OH, Aurora Loan Services LLC.

Richard E. Hackerd, Cleveland, OH, for Thomas R. Christopherson.

Joel K. Jensen, Cincinnati, OH, for Bank of America, NA, CitiMortgage, Inc., Sovereign Bank, FSB, Sovereign Bank, Deutsche Bank Nat. Trust Co.

Jeanette LeRay, Rosewell, GA, for Litton Loan Servicing, L.P.

Steven H. Patterson, Cincinnati, OH, for Sovereign Bank, FSB.

Dean R. Prober, Woodland Hills, CA, for BAC Home Loans Servicing, LP c/o Prober & Raphael, A Law Corp.

Martha R. Spaner, Reisenfeld & Associates LPA LLC, Cincinnati, OH, for Coun-

trywide Bank, FSB, BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P.

Linh Tran, Seattle, WA, for Roundup Funding, LLC.

Linda Maria Battisti, Office of the U.S. Trustee, Cleveland, OH, for U.S. Trustee.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The matters before this Court is Confirmation of the Debtor's Chapter 11 Plan, the Debtor's Objections to Claims and the Debtor's Motions to Value Collateral and Avoid Certain Liens. Creditors Countrywide, Bank of America, Aurora Loan Services, Sovereign Bank, CitiMortgage, BAC, Deutsche Bank and Litton Loan Services filed Objections to Plan and Motions to Value and filed Responses to Debtor's Objections to Claims. Core jurisdiction of these matters is acquired under provisions of 28 U.S.C. § 157(b)(2), 28 U.S.C. § 1334, and General Order No. 84 of this district. Upon a duly noticed evidentiary hearing and an examination of the pleadings, generally, the following factual findings and conclusions of law are herein rendered:

*

The parties have stipulated to the following facts:

The Debtor, Thomas Christopherson, filed for voluntary relief under Chapter 11 of the Bankruptcy Code on April 4, 2010, indicating that his debts were primarily business in nature. The Debtor filed his original Plan of Reorganization on August 2, 2010 and an Amended Plan on October 22, 2010. Prior to filing bankruptcy, the Debtor purchased several properties located across the greater Cleveland area and in northwest Pennsylvania. These proper-ties were mortgaged through Countrywide, Bank of America, Aurora Loan Services, Sovereign Bank, CitiMortgage, BAC, Deutsche Bank and Litton Loan Services (collectively "Creditors"). The Debtor used the properties as rental income. The petition indicates that the Debtor is indebted to the Creditors in the amount of $5,290,075. He asserts that $3,536,575.99 of that amount is unsecured. (Schedule D, pg. 3). The Creditors proofs of claim are in conflict with the Debtor's stated secured amounts.

The Debtor filed seven Objections to the first lien holders' proofs of claim and filed Motions to Value Collateral to obtain the proper market value of each property. Pursuant to his Plan, the Debtor proposes to cram-down each property to the market value, bifurcate the first lien holders' claims pursuant to § 506(a) and avoid second and third lien holders' claims if no equity exists in their respective properties for the liens to attach.

The Creditors individually filed Objections to the Debtor's Amended Plan and Motions to Value Collateral. Specifically, the Creditors objected to the valuation of each property and the Debtor's proposed interest rate to the modified mortgages. Prior to the evidentiary hearing, the Debtor and five of the six objecting Creditors stipulated to the value of their respective properties. These agreed entries also resolved the Debtor's Objection to those Creditors' claims. The Debtor and Citi-Mortgage have agreed to adjourn a valuation hearing of the property located at 285 Coming Drive, Bratenhal, Ohio until after this ruling. Countrywide, Bank of America and CitiMortgage also objected to the modification of their secured mortgages. Each asserts that its lien secures three different properties that were to serve as the Debtor's primary residence, pursuant to the security agreement. Pursuant to

§ 1123(b)(5) of the Bankruptcy Code, they argue that the Debtor is precluded from modifying their secured claims.

The Debtor denies that the properties mortgaged through Bank of America and CitiMortgage are his primary residence. The Debtor asserts that his primary residence is located at 1863 Cadwell in Cleveland, Ohio. Notwithstanding, he argues that, because of the property's mixed use, the anti-modification provision of § 1123(b)(5) does not apply.

* *

The Court must first determine the date that establishes a debtor's primary residence for the purposes of § 1123(b)(5). Once the primary residence is established, the court must then determine if a property's mixed use can render the anti-modification provision inapplicable.

* * *

■ The Debtor seeks confirmation of his proposed plan pursuant to § 1129(b)(1) of the Bankruptcy Code. This subsection, usually referred to as the "cram-down" provision provides that:

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1). The Debtor must show by a preponderance of the evidence that his proposed plan is confirmable. 11 U.S.C. § 1129; *In re Christian Faith Assembly*, 402 B.R. 794 (Bankr.N.D.Ohio 2009). The required elements for confirmation are outlined in § 1129(a), unless provisions under § 1129(b) are appropriate. *See*, 11 U.S.C. § 1129(a). Herein, the objecting Creditors argue that the Debtor's plan was not offered in good faith as required by § 1129(a)(3), because of the plan's cram-down provisions.

Section 506(a) addresses modification of secured claims and provides in relevant part:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

*Determining Primary Residence*

Under the Bankruptcy Code, § 506(a) permits a debtor to bifurcate a secured claim. Essentially, the claim is secured only to the extent of the value of the collateral. The amount of the lien that exceeds such value is deemed unsecured. There exists a statutory interplay between § 506(a) and § 1123(b)(5) which is modeled after § 1322. The latter subsection is known as the anti-modification provision and precludes debtors from modifying claims that are secured only by a debtor's primary residence. It provides:

Subject to subsection (a) of this section, a plan may—(5) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.] 11 U.S.C. § 1123(b)(5). The anti-modification clause only applies to primary residential mortgages. *Id.* Herein, several creditors assert that their liens secure the Debtor's primary residence.

■ Determining whether a property is a debtor's residence requires the consideration of two methods of reasoning. The majority of courts has determined that the critical date is the petition filing date. *In re Baker,* 398 B.R. 198 (Bankr.N.D.Ohio 2008); See, e.g., *In re Howard,* 220 B.R. 716, 718 (Bankr.S.D.Ga.1998); *In re Lebrun,* 185 B.R. 665, 666 (Bankr.D.Mass. 1995); *In re Wetherbee,* 164 B.R. 212, 215 (Bankr.D.N.H.1994). This rationale is supported by the policy against postpetition modification. Courts following this view reason that the failure to consider the petition date could lead to creditor manipulation. *In re Dinsmore,* 141 B.R. 499, 505–06 (Bankr.W.D.Mich.1992). Utilizing the petition date prevents creditors from disavowing, on a post-petition basis, a security interest in property not constituting a debtor's principal residence so as to gain the protections of § 1322(b)(2)'s anti-modification clause. *Id.*

A minority of courts hold that a debtor's primary residence is determined at the time the security interest was created. *In re Smart,* 214 B.R. 63 (Bkrtcy. D.Conn.,1997). This rationale is supported by the legislative history to § 1322 and § 1123(b)(5) which indicates that these subsections intended to encourage and sustain a flow of affordable capital into the home lending market. *Nobelman,* 508

U.S. at 332, 113 S.Ct. 2106, 2111–12, 124 L.Ed.2d 228 (1993) (Justice Stevens, concurring); see, generally, *Grubbs v. Houston First American Savings Association,* 730 F.2d 236, 245–46 (5th Cir.1984). These courts reason that creditors are more likely to lend if they can rely on the enforceability of their agreements which secures their rights against subsequent modifications post bankruptcy. *Id.*

Allowing the primary residential location to be determined at any other point in time once the bankruptcy petition is filed could, however, be problematical and not in the best interest of a debtor's bankruptcy estate. The minority position requires a subjective look into the parties intentions which is difficult to ascertain after the fact, and could lead to inconsistent rulings. Therefore, this Court follows the majority view that a bright line rule should be applied.

Herein, the Debtor has stipulated that 1863 Cadwell Cleveland, Ohio is his primary residence currently and on the petition filing date. (See Petition, pg. 1). The Debtor has occupied this residence for the past three and a half years. (Countrywide's Trial Brief, pg. 2). Although the Debtor agreed to use the Bank of America and CitiMortgage properties as his primary residence, neither property was the Debtor's primary residence at the time the bankruptcy petition was filed. (Bank of America's Trial Brief in Support of Objection to Plan, Exh. B, pg. 7, para. 6; CitiMortgage's Objection to Plan, pg. 2).

■ Notwithstanding, the relevant time periods for the execution of each mortgage is duly considered. The CitiMortgage security agreement was signed one year after the Debtor's mortgage with Countrywide (Debtor's primary residence) and the Debtor agreed that the CitiMortgage property would become his primary residence. There was, however, no evidence

presented to explain the circumstances surrounding the execution of the CitiMortgage security agreement or the Debtor's actions subsequent to said execution. Without more, this Court can not engage in an in-depth analysis of the Debtor's intentions at the time said mortgage was created. Such analysis could only lead to inconsistent and questionable rulings. Pursuant to the Debtor's petition, at the time of the bankruptcy filing the Debtor's primary residence is 1863 Cadwell Cleveland, Ohio. (See, Debtor's Petition, pg. 1). Thusly, the properties secured by Bank of America and CitiMortgage were not the Debtor's primary residence on the petition filing date and are not subject to the anti-modification provision of § 1123(b)(5).

### Modification of Residential Home

■ The Supreme Court addressed the conflicting provisions of §§ 506(a) and 1123(b)(5) in *Nobelman v. American Savings Bank.* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Therein, the Court, although referring to 1123(b)(5)'s counterpart, determined that § 1322(b)(2) precluded a debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence. *Nobelman,* 508 U.S. at 324, 113 S.Ct. 2106 S.Ct. At 2108.

Although an examination of § 1123(b)(5) is unambiguous, the statute does not, however, explicitly define which residences are included or excluded from this anti-modification provision. The Debtor argues that, because his residential property also produces income, the mixed use property, which constitutes his primary residence, is not subject to the anti-modification provision of § 1123(b)(5). To support his contention, the Debtor cites to several courts which have addressed this issue and have held that the anti-modification clause does not apply to a multi-unit property. *See,*

*Lomas Mortgage Inc., v. Louis* 82 F.3d 1 (1st Cir.1996); *In re Scarborough,* 461 F.3d 406 (3rd Cir.2006); *In re Kimbell,* 247 B.R. 35 (Bankr.W.D.N.Y.2000) (Bright line rule that anti-modification clause does not apply to multi-unit properties in which the Debtor lives in only one unit).

Other courts have adopted a case-by-case analysis, opining that the applicability of the anti-modification provision should depend on the intended primary use of the property, not its physical dimensions. *See In re Brunson,* 201 B.R. 351, 352–54(Bankr.W.D.N.Y.1996); *In re Guilbert,* 176 B.R. 302 (Bankr.D.R.I.1995) (A debtor's residential property is not rendered "something other than a [primary] residence" regardless of its income-earning functions or its residents). Some courts have declined to follow this approach as it requires a subjective analysis of the parties intentions. *Id.*

Upon due consideration of the evidence adduced and the record, generally, the Debtor has failed to meet his burden to show that his primary residence is mixed use. The parties orally agreed at the evidentiary hearing that all conclusions of law would be based solely on the briefs, which is not evidence in and of itself. The Countrywide mortgage indicates that the property in question will be used as the Debtor's primary residence and makes no reference to the property being used as income. (Countrywide's Objection to Chapter 11 Plan Exh. 1 pg. 17 para. 6). Although the Debtor asserts that the property is mixed use in his briefs, no evidence was produced to contradict the Countrywide security agreement. Thusly, Countrywide's mortgage, which secures the Debtor's primary residence is subject to the anti-modification provision of § 1123(b)(5) and cannot be crammed-down.

\* \* \* \*

Accordingly, the Objections to Plan are sustained in part and overruled in part. The Objections to Plan filed by creditors Bank of America and CitiMortgage are hereby overruled as to mortgage modification only. Bank of America's objection to valuation has been resolved previously on an agreed entry. Countrywide's Objection to Plan as to mortgage modification is hereby sustained. Debtor's primary residential mortgage cannot be modified. Accordingly, Debtor's Plan, as submitted, is infeasible and is hereby denied confirmation. The valuation hearing regarding CitiMortgage's property located at 285 Corning Drive, Bratenhal, Ohio will be scheduled for hearing forthwith.

**IT IS SO ORDERED.**